FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 04, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GINGER B., | No. 1:17-cv-03128-MKD |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 17, 21 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 17, 21. The parties consented to proceed before a magistrate judge. ECF No. 4. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's Motion, ECF No. 17, and grants Defendant's Motion, ECF No. 21.

ORDER - 1

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial

ORDER - 3

gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §
416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's
RFC, the claimant is capable of performing work that he or she has performed in
the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is
capable of performing past relevant work, the Commissioner must find that the
claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of
performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's
RFC, the claimant is capable of performing other work in the national economy.
20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner
must also consider vocational factors such as the claimant's age, education and
past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of
adjusting to other work, the Commissioner must find that the claimant is not
disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to
other work, analysis concludes with a finding that the claimant is disabled and is
therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.
*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to
step five, the burden shifts to the Commissioner to establish that (1) the claimant is

ORDER - 5

capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On July 3, 2013, Plaintiff protectively filed an application for Title XVI supplemental security income benefits, alleging an onset date of September 29, 2012. Tr. 197-210. The application was denied initially, Tr. 85-98, 118-25, and on reconsideration, Tr. 99-113, 127-32. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on November 12, 2015. Tr. 39-73. On January 26, 2016, the ALJ denied Plaintiff's claim. Tr. 17-38.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since July 3, 2013, the application date. Tr. 22. At step two, the ALJ found Plaintiff has the following severe impairments: affective disorder and anxiety disorder. *Id.* At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 23. The ALJ then concluded that Plaintiff has the RFC to perform a full range of work at all exertional limitations but with the following nonexertional limitations:

> [S]he can maintain concentration persistence or pace in 2-hour increments for simple repetitive tasks throughout an 8-hour workday; she can work superficially and occasionally with the general public; superficial means she can refer the public to others to respond to demands/requests but she is not

having to resolve those demands/requests; she can occasionally interact with supervisors and with occasional interaction, she can response appropriately to supervisor criticism; she can work in the same room with unlimited number of coworkers but not in coordination of work activity with her coworkers; and she can respond to simple workplace changes as may be required for simple repetitive task work.

Tr. 24.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work. Tr. 30. At step five, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as industrial cleaner, kitchen helper, and laundry worker II. Tr. 31. The ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from July 3, 2013 through January 26, 2016, the date of the ALJ's decision. Tr. 31-32.

On May 26, 2017, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ properly evaluated whether Plaintiff's impairments meet or medically equal the severity of a listed impairment;

2. Whether the ALJ properly evaluated Plaintiff's symptom complaints; and

ORDER - 7

3.  Whether the ALJ properly evaluated the medical opinion evidence. ECF No. 17 at 1.

**DISCUSSION**

**A. Listed Impairments**

Plaintiff faults the ALJ for finding at step three that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment.  ECF No. 17 at 5-9.  At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment.  20 C.F.R. § 416.920(a)(4)(iii).  The Listing of Impairments "describes each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience."  20 C.F.R. § 416.925.  To meet a listed impairment, a claimant must establish that she meets each characteristic of a listed impairment relevant to her claim.  20 C.F.R. § 416.925(d).  If a claimant meets the listed criteria for disability, she will be found to be disabled.  20 C.F.R. § 416.920(a)(4)(iii).  The claimant bears the burden of establishing she meets a listing.  *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

The ALJ concluded that Plaintiff's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of Listing 12.04

ORDER - 8

(affective disorders) or Listing 12.06 (anxiety-related disorders). Tr. 23. Plaintiff challenges the ALJ's consideration of the Paragraph B criteria. ECF No. 17 at 5-9.

The Paragraph B criteria for either listing are met if the impairment results in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. § 404, Subpart P, Appendix I. "Marked" means more than moderate but less than extreme. *Id.*

The ALJ found Plaintiff had mild restriction in activities of daily living. Tr. 23. The ALJ observed Plaintiff was independent in her personal care, cared for her three school-aged children, prepared meals, and performed household chores. *Id.* (citing Tr. 55-56, 248-55, 382, 356). Plaintiff does not challenge this finding, ECF No. 17 at 5-9, thus, any challenge is waived. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining Court may decline to address on the merits issues not argued with specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).

The ALJ found Plaintiff had experienced no episodes of decompensation which have been of extended duration. Tr. 23. Plaintiff does not challenge this

finding, ECF No. 17 at 5-9, thus any challenge is waived. *See Carmickle*, 533 F.3d at 1161 n.2; *Kim*, 154 F.3d at 1000.

The ALJ found Plaintiff had moderate difficulties in social functioning. Tr. 23. Social functioning refers to a claimant's "capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals" and includes "the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers." 20 C.F.R. § 404, Subpart P, Appendix I. The ALJ observed Plaintiff reported that she isolated herself from others, but that she also shopped in stores and independently attended medical appointments. Tr. 23. Plaintiff challenges the ALJ's conclusion, arguing that Plaintiff needed assistance with shopping, had difficulty attending medical appointments, and that the ALJ ignored medical evidence of Plaintiff's social difficulties. ECF No. 17 at 6-7. The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted). Although Plaintiff testified that she needed her mother with her to go to the grocery store, she also testified that she was able to go to convenience stores on her own and that she was able to shop for a few things at a time on her own. Tr. 55-56. Plaintiff's counseling record reflects that Plaintiff was able to

attend counseling appointments independently, except for a handful of appointments where Plaintiff brought her children with her.  Tr. 409-534; *see* Tr. 415, 458.  The ALJ also observed throughout the record that Plaintiff had supportive relationships with several family members.  Tr. 27; *see* Tr. 375 (Plaintiff reported she has no friends because she keeps busy with her family); Tr. 250 (Plaintiff reported receiving regular support and encouragement from her sister and her mother).  The ALJ's conclusion of moderate limitations in social functioning is a reasonable interpretation of the evidence.  This finding is supported by substantial evidence.

The ALJ found Plaintiff had moderate difficulties in concentration, persistence, or pace.  Tr. 23.  Concentration, persistence, or pace refers to a claimant's "ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings."  20 C.F.R. § 404, Subpart P, Appendix I.  The ALJ observed some of Plaintiff's mental status examinations showed no scattered or disorganized thoughts, and that Plaintiff reported she was thrifty and could make money go a long way, indicating Plaintiff had sufficient concentration capabilities to budget.  Tr. 23.  Plaintiff argues that this finding was not supported by substantial evidence, citing a series of mental status examinations that show scattered or disorganized thoughts.  ECF No. 17 at 9; *see* Tr. 414, 416, 418, 420, 423, 427, 429, 432.  Even if

the ALJ's finding regarding Plaintiff's mental status examinations was not supported by substantial evidence, such error is harmless. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (quotation and citation omitted). The Court may not reverse the ALJ's decision for an error that is harmless. *Id.* at 1111. As discussed *supra*, Plaintiff did not establish any of the other Paragraph B criteria. Therefore, even if the ALJ should have found more than moderate difficulties in Plaintiff's concentration, persistence, and pace, the step three finding would remain the same because Plaintiff did not establish at least two of the Paragraph B criteria. Plaintiff is not entitled to remand on these grounds.

**B. Plaintiff's Symptom Testimony**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her symptom claims. ECF No. 17 at 16-21. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina,* 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could

reasonably have caused some degree of the symptom." *Vasquez v. Astrue,* 572 F.3d 586, 591(9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In assessing symptom complaints, the ALJ may consider, *inter alia,* (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or

third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas,* 278 F.3d at 958-59.

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms, but that Plaintiff's testimony about the intensity, persistence, and limiting effects of her symptoms were not entirely credible. Tr. 25.

### 1. *Reason for Stopping Work*

The ALJ found Plaintiff's symptom complaints were less credible because Plaintiff stopped working for reasons unrelated to her impairments. Tr. 25. An ALJ may consider that a claimant stopped working for reasons unrelated to the allegedly disabling condition in making a credibility determination. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). Here, the ALJ observed that Plaintiff testified that she left her waitress job at Denny's because of childcare issues and did not return to the job because she "didn't keep in good contact with them." Tr. 25; *see* Tr. 47-48. Plaintiff testified that she left a job at Shari's Restaurant because she "couldn't keep up" and "just quit going." Tr. 49. Plaintiff also testified that she left a prior job at Denny's because she gave birth to her son, then broke her leg and "didn't keep in contact, so they didn't hold my job." Tr. 50. Plaintiff similarly reported throughout the record that she stopped working to care for her children and reported waitressing on and off but being a stay at home mom

for most of her life.  *See* Tr. 376, 544.  The ALJ reasonably concluded that the

record demonstrated that Plaintiff discontinued work for reasons other than her

disability, which undermined the credibility of her subjective symptom complaints.

Tr. 25.

### 2. Inconsistent Statements

The ALJ found Plaintiff's symptoms complaints were less credible because

the record documented several inconsistent statements by Plaintiff.  Tr. 25.  In

evaluating symptom claims, the ALJ may utilize ordinary techniques of evaluation

of the evidence, including prior inconsistent statements.  *See Smolen v. Chater*, 80

F.3d 1273, 1284 (9th Cir. 1996).  Moreover, it is well-settled in the Ninth Circuit

that conflicting or inconsistent statements concerning drug use can contribute to an

adverse credibility finding.  *Thomas*, 278 F.3d at 959.

The ALJ observed that Plaintiff's report that she sought CPS involvement by

her own volition was inconsistent with treatment notes indicating that her

counselor called for CPS intervention.  *Compare* Tr. 53 ("I called CPS a few years

ago, and asked them for help because I was overwhelmed") *with* Tr. 458

("[Plaintiff] was informed that due to the episode with her kids yesterday a CPS

[sic] was placed").  The ALJ also observed that Plaintiff inconsistently reported her

drug use history.  Tr. 25.  At the hearing, Plaintiff testified that she did not drink to

the point of intoxication or blackout.  Tr. 57.  However, the record indicates

Plaintiff reported a history of heavy drinking, with at least one alcohol-related blackout. Tr. 382. Additionally, Plaintiff was diagnosed with acute alcohol intoxication when she presented to the emergency room for cutting her arm. Tr. 677. At the hearing, Plaintiff testified that she was a young adult when she last used marijuana. Tr. 57. However, Plaintiff reported ongoing occasional marijuana use in April 2013, when Plaintiff was 42 years old. Tr. 381-82. Later, in September 2013, Plaintiff reported that her last marijuana use was one year ago. Tr. 535. The ALJ reasonably concluded that these inconsistencies in Plaintiff's testimony undermined the credibility of her testimony. Tr. 25. This was a clear and convincing reason to discredit Plaintiff's subjective symptom testimony.

### 3. Inconsistency with the Medical Evidence

The ALJ found that Plaintiff's symptom complaints exceeded the level of impairment supported by the objective medical evidence of record. Tr. 25. An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's impairment and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2).

First, the ALJ found Plaintiff's symptom complaints were inconsistent with the record of her positive response to treatment. Tr. 26-27. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3) (2011); *see also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). Here, the ALJ noted that the record showed Plaintiff's symptoms showed improvement with medication and counseling. Tr. 25; *see* Tr. 419 (Plaintiff reported in March 2013 that her current medications helped stabilize her mood); Tr. 569 (Plaintiff reported in March 2013 that she felt good for the first time); Tr. 417 (Plaintiff reported in May 2013 that Clonidine was helpful for her anxiety); Tr. 415 (Plaintiff reported in May 2013 that medication helped her control her bipolar symptoms and Clonidine worked well at controlling her anxiety symptoms); Tr. 624 (Plaintiff's counselor reported in August 2013 that Plaintiff's mood and level of functioning improved after participating in counseling). Plaintiff cites to evidence of mental status examinations showing impairment, arguing that the ALJ mischaracterized the evidence as a whole. ECF No. 17 at 17. However, where the ALJ's interpretation of the record is reasonable, as it is here, it should not be second-guessed. *Rollins*, 261 F.3d at 857. This was a clear and convincing reason to discredit Plaintiff's subjective symptom testimony.

Second, the ALJ found Plaintiff's symptom complaints were inconsistent with her record of conservative treatment, notably Plaintiff's failure to engage in recommended counseling services. Tr. 25-26. It is well-established that unexplained or inadequately explained non-compliance with treatment reflects on a claimant's credibility. *See Molina*, 674 F.3d at 1113-14; *Tommasetti*, 533 F.3d at 1039; *see also Smolen*, 80 F.3d at 1284 (an ALJ may consider a claimant's unexplained or inadequately explained failure to follow a prescribed course of treatment when assessing a claimant's credibility).

Here, the ALJ noted that Plaintiff declined to participate in counseling, despite numerous recommendations to do so. Tr. 26, 28. The record shows Plaintiff's treating counselor recommend Plaintiff continue counseling in April 2013. Tr. 519-20. Examining provider Dr. Harmon similarly recommended goal-focused mental health support, such as cognitive-behavioral treatment, in April 2013. Tr. 753. Plaintiff's treating counselor again recommended continued services in July 2013. Tr. 455. Upon moving to California in approximately November 2013, Plaintiff established care with a new provider who recommended Plaintiff pursue group therapy. Tr. 550. Plaintiff later returned to Washington and was again encouraged by a treating provider to pursue mental health treatment in October 2014. Tr. 825. However, the record as a whole shows Plaintiff did not engage in counseling after July 2013. Tr. 455, 623-24. Plaintiff testified at the

hearing that she used to go to counseling, but did not go anymore. Tr. 51. She

further testified that nothing at home prevented her from going to counseling and

that she "really just [didn't] want to go" back to counseling. Tr. 51-52. The ALJ

reasonably interpreted Plaintiff's record of declining to participate in

recommended counseling as being inconsistent with the level of impairment

Plaintiff alleged. Tr. 25. This was a clear and convincing reason to discredit

Plaintiff's subjective symptom complaints.

### 4. Activities of Daily Living

The ALJ found Plaintiff's activities of daily living were inconsistent with the

level of impairment she alleged. Tr. 27. A claimant's reported daily activities can

form the basis for an adverse credibility determination if they consist of activities

that contradict the claimant's "other testimony" or if those activities are

transferable to a work setting. *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007);

*see also Fair*, 885 F.2d at 603 (daily activities may be grounds for an adverse

credibility finding "if a claimant is able to spend a substantial part of his day

engaged in pursuits involving the performance of physical functions that are

transferable to a work setting."). "While a claimant need not vegetate in a dark

room in order to be eligible for benefits, the ALJ may discredit a claimant's

testimony when the claimant reports participation in everyday activities indicating

capacities that are transferable to a work setting" or when activities "contradict

claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13 (internal quotation marks and citations omitted).

The record shows Plaintiff was able to independently engage in daily activities during the relevant period. *See* Tr. 374 (Plaintiff reported helping her children, grooming herself, housecleaning, washing clothes, shopping for food, and preparing light meals); Tr. 382 (Plaintiff managed her daily activities on her own and looked after her children); Tr. 536 (Plaintiff "does all of her activities of daily living, including some household works"). Plaintiff was able to complete these daily activities while also caring for three young children. Tr. 248-49 (Plaintiff reported feeding, grooming, and dressing her children, ages four, six, and seven). Although Plaintiff testified at the hearing that she could no longer go to the grocery store alone, she also testified that she was able to go to convenience stores or pick up a few items on her own. Tr. 55-56. Plaintiff argues that Plaintiff's daily activities as performed are consistent with the level of impairment she alleged. ECF No. 17 at 20. However, where evidence is subject to more than one rational interpretation, the ALJ's conclusion will be upheld. *Burch*, 400 F.3d at 679. The ALJ reasonably concluded that Plaintiff's ability to independently perform activities of daily living indicated that her impairments were not as severe as alleged. Tr. 27. This was a clear and convincing reason to discredit Plaintiff's symptom testimony.

## C. Medical Opinion Evidence

Plaintiff challenges the ALJ's consideration of the medical opinions of David Sandvik, M.D.; Dana Harmon, Ph.D.; and Susana Dinges, L.M.H.C.  ECF No. 17 at 9-16.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's.  *Id.* at 1202.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."  *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence."  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).  "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester,* 81 F.3d at 830-831).

### 1. Dr. Sandvik

Dr. Sandvik examined Plaintiff on September 7, 2012, and opined that "[w]ith the complications of her family and her physical problems, it is difficult to imagine that she could manage the stress of full time employment. Perhaps she could work part-time, especially intermittently for brief periods, but this would depend on her being fairly healthy physically." Tr. 374-76. The ALJ gave this opinion little weight. Tr. 28. Because Dr. Sandvik's opinion was contradicted by Dr. Clifford, Tr. 93-95, the ALJ was required to provide specific and legitimate reasons for rejecting the opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ discredited Dr. Sandvik's opinion as being based on Plaintiff's self-reports. Tr. 28. A physician's opinion may be rejected if it based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Sec Admin.*, 169 F.3d 595, 602 (9th Cir. 1999); *Fair*, 885 F.2d at 604. "[W]hen an

opinion is not more heavily based on a patient's self-reports than on clinical

observations, [this] is no evidentiary basis for rejecting the opinion." *Ghanim*, 763

F.3d at 1162. Dr. Sandvik's report contains a combination of Plaintiff's self-

reports and findings from a mental status examination, and does not reference a

review of any medical records. Tr. 374-76. However, Dr. Sandvik's opinion

regarding Plaintiff's ability to work is qualified with specific consideration of

Plaintiff's family stressors and physical symptoms, which are not measured on the

mental status examination. Tr. 375-76. Therefore, the ALJ reasonably concluded

that Dr. Sandvik's opinion was more heavily based on Plaintiff's self-reports than

clinical observations. Tr. 28. Because the ALJ properly discredited Plaintiff's

symptom complaints, as discussed *supra*, this was a specific and legitimate reason

to discredit Dr. Sandvik's opinion.

Second, the ALJ discredited Dr. Sandvik's opinion as vague and for failure

to provide any functional assessments. Tr. 28. The Social Security regulations

"give more weight to opinions that are explained than to those that are not."

*Holohan*, 246 F.3d at 1202. "[T]he ALJ need not accept the opinion of any

physician, including a treating physician, if that opinion is brief, conclusory and

inadequately supported by clinical findings." Furthermore, an ALJ may reject an

opinion that does "not show how [a claimant's] symptoms translate into specific

functional deficits which preclude work activity." *See Morgan,* 169 F.3d at 601.

Dr. Sandvik's opined limitations are equivocal, as Dr. Sandvik only opined "it is difficult to imagine" that Plaintiff could maintain full-time employment, and "*perhaps* she could work part-time." Tr. 376 (emphasis added). Dr. Sandvik provided no further explanation of his opinion about Plaintiff's capacity to work. Furthermore, Dr. Sandvik did not provide any function-by-function analysis of Plaintiff's functional limitations or explanation of how her impairments "might limit [her] ability to work on a sustained basis." *Id.*; *Morgan*, 169 F.3d at 601. The ALJ reasonably discredited these findings as vague and not sufficiently explained. Tr. 28. This was a specific and legitimate reason to discredit Dr. Sandvik's opinion.

Third, the ALJ discredited Dr. Sandvik's opinion as being outside his area of expertise. Tr. 28. A medical provider's specialization is a relevant consideration in weighing medical opinion evidence. 20 C.F.R. § 416.927(c)(5). As a psychiatrist, Dr. Sandvik's area of expertise is not physical functioning. *See Fithian v. Berryhill*, No. 3:16-cv-932-SI, 2017 WL 1502801, at *8 (D. Or. Apr. 26, 2017) ("[A]ll psychiatrists are M.D.'s, and although some psychiatrists may treat or specialize in physical impairments, not all do. Thus the mere fact that Dr. Jones is an M.D. does not mean her physical-limitation opinion deserves controlling weight."); *Williams v. Colvin*, No. 2:14-cv-00213-FVS, 2015 WL 5039911, at *8 (E.D. Wash. Aug. 26, 2015) (citing *Brosnahan v. Barnhart*, 336 F.3d 671, 676 (8th

ORDER - 24

Cir. 2003)) (finding physical limitations were beyond the expertise of psychologist). Dr. Sandvik's opinion regarding Plaintiff's functioning is specifically qualified with consideration to Plaintiff's physical health. Tr. 376. Dr. Sandvik did not physically examine Plaintiff or review any records of her physical functioning. Tr. 374-76. The ALJ reasonably credited the opinion of Dr. Spackman, a reviewing expert who reviewed the longitudinal record, about Plaintiff's physical functioning over that of Dr. Sandvik, who did no such review and whose specialty is psychiatry. Tr. 29. This was a specific and legitimate reason to discredit Dr. Sandvik's opinion.

### 2. Dr. Harmon

Dr. Harmon examined Plaintiff on April 25, 2013, and opined that Plaintiff had moderate impairments in her ability to understand, remember, and persist in tasks by following detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; learn new tasks; adapt to changes in a routine work setting; maintain appropriate behavior in a work setting; and set realistic goals and plan independently; that Plaintiff had marked impairments in her ability to communicate and perform effectively in a work setting and complete a normal work day and work week without interruptions from psychologically based symptoms; that Plaintiff's impairments would endure for six to twelve months; and

that Plaintiff did not appear to be appropriate for SSI/SSDI facilitation because she had been able to work and function fairly well in the past and should be able to return to work within the next six to twelve months. Tr. 381-83. The ALJ gave significant weight to Dr. Harmon's conclusion that Plaintiff did not appear to be appropriate for SSI/SSDI, but gave no weight to Dr. Harmon's opinion about marked limitations. Because Dr. Harmon's opinion was contradicted by Dr. Clifford, Tr. 93-95, the ALJ was required to provide specific and legitimate reasons for rejecting the opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Harmon's opinion was inconsistent with the longitudinal evidence. Tr. 28. An ALJ may discredit physicians' opinions that are unsupported by the record as a whole. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Here, the ALJ noted that Dr. Harmon opined marked limitations in her ability to communicate effectively in a work setting and complete a normal work day and work week without interruptions from psychologically based symptoms. Tr. 28. The ALJ found these limitations were inconsistent with Plaintiff's record of being able to attend medical appointments independently.[1] *See* Tr. 409-534. Plaintiff argues that this finding is not supported

_____

[1] The ALJ also found that these limitations were inconsistent with Plaintiff's ability to meet court requirements in order to "get her children back." Tr. 28. The

ORDER - 26

because Ms. Dinges' discredited opinion indicated that Plaintiff's difficulties in making her appointments were attributable to anxiety. Tr. 786. The Court may not reverse the ALJ's decision based on Plaintiff's disagreement with the ALJ's interpretation of the record. *See Tommasetti*, 533 F.3d at 1038 ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will not reverse the ALJ's decision). The ALJ reasonably interpreted the record as a whole as showing a pattern of independently attending appointments that was inconsistent with the level of limitation Dr. Harmon opined. Tr. 28. This was a specific and legitimate reason to discredit Dr. Harmon's opinion.

Second, the ALJ found Dr. Harmon's opinion was internally consistent. Tr. 28. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. Moreover, a

_____

Commissioner declines to rely on this finding, "because it does not appear from the record that there were court requirements for Plaintiff to get her children back." ECF No. 21 at 12. The Court notes that Plaintiff testified that she complied with CPS's requirement that she attend counseling after Plaintiff cut her arm and while her children stayed with her mother. Tr. 53-54.

physician's opinion may be rejected if it is unsupported by the physician's treatment notes. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003). Here, the ALJ noted that Dr. Harmon opined several moderate and marked limitations. Tr. 28; *see* Tr. 383. However, the ALJ also noted that Dr. Harmon recommended Plaintiff participate in vocational training. *Id.* Dr. Harmon specifically opined that Plaintiff would be able to return to work within six to twelve months with mental health support, medication, and vocational training. Tr. 383. The ALJ reasonably concluded that Dr. Harmon's opinion that Plaintiff could return to work with vocational training was inconsistent with Dr. Harmon's opined marked limitations. Because this is a reasonable interpretation of the evidence, the Court defers to the ALJ's finding. *Burch*, 400 F.3d at 679. This was a specific and legitimate reason to discredit Dr. Harmon's opinion.

### 3. Ms. Dinges

Ms. Dinges, Plaintiff's treating counselor, opined on August 15, 2012, that Plaintiff had difficulties with following instructions, difficulties concentrating on tasks for more than five minutes, that Plaintiff was unable to follow directions, that Plaintiff had difficulty sitting still for long periods of time, that Plaintiff was unable to understand at times and got easily confused when asked questions, and that Plaintiff was limited to sedentary work. Tr. 785-86. The ALJ gave this opinion minimal weight. Tr. 28. Ms. Dinges does not qualify as an acceptable

medical source.  20 C.F.R. § 416.902[2] (Acceptable medical sources are licensed

physicians, licensed or certified psychologists, licensed optometrists, licensed

podiatrists, qualified speech-language pathologists, licensed audiologists, licensed

advanced practice registered nurses, and licensed physician assistants).  An ALJ is

required to consider evidence from non-acceptable medical sources.  20 C.F.R. §

416.927(f).[3]  The opinions of non-acceptable medical sources "should be evaluated

under the same factors as all other medical opinions."  *Eckermann v. Astrue*, 817 F.

Supp. 2d 1210, 1221-22 (D. Id. 2011) (citing SSR 06-03p).  An ALJ must give

reasons "germane" to each source in order to discount evidence from non-

acceptable medical sources.  *Ghanim*, 763 F.3d at 1161.

        First, the ALJ found Ms. Dinges' opinion was entitled to less weight because

it was rendered prior to the alleged onset date.  Tr. 28.  Medical opinions from

before the alleged onset date are of limited relevance to the ALJ's disability

determination.  *Carmickle*, 533 F.3d at 1165.  Plaintiff's alleged onset date in this

claim is September 29, 2012.  Tr. 198.  Ms. Dinges' opinion was rendered on

_____

[2] Prior to March 27, 2017, the definition of an acceptable medical source was

located at 20 C.F.R. § 416.913.

[3] Prior to March 27, 2017, the requirement that an ALJ consider evidence from

non-acceptable medical sources was located at 20 C.F.R. § 416.913(d).

August 15, 2012. Tr. 787. Indeed, Ms. Dinges' opinion was rendered during the relevant period of Plaintiff's prior SSI claim, in which the Commissioner determined Plaintiff was not disabled between May 1, 2009, and September 28, 2012. Tr. 75-84, 114-17. The timing of Ms. Dinges' opinion was a germane reason for the ALJ to discredit Ms. Dinges' opinion.

Second, the ALJ found Ms. Dinges' opinion was based on Plaintiff's self-reports, which the ALJ found were less than credible. Tr. 29. A physician's opinion may be rejected if it based on a claimant's subjective complaints which were properly discounted. *Tonapetyan*, 242 F.3d at 1149; *Morgan*, 169 F.3d at 602; *Fair*, 885 F.2d at 604. "[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, [this] is no evidentiary basis for rejecting the opinion." *Ghanim*, 763 F.3d at 1162. The ALJ found Ms. Dinges' opinion was based mostly on Plaintiff's self-reports. Tr. 29. Ms. Dinges' opinion indicates that it is supported by Plaintiff's psychiatric progress notes. Tr. 785. A review of Ms. Dinges' treatment notes up until the date she rendered her opinion reveals that the notes largely record Plaintiff's complaints and do not document objective testing results. Tr. 770-82. The ALJ reasonably concluded that Ms. Dinges' opinion was mostly based on Plaintiff's self-reports, Tr. 28-29, and as discussed *supra*, the ALJ properly discredited Plaintiff's subjective symptom

testimony.  This was a germane reason for the ALJ to discredit Ms. Dinges' opinion.  These two reasons alone were sufficient to reject Ms. Dinges' opinions.

Third, the ALJ further found Ms. Dinges rendered opinions on physical functioning, which the ALJ found were outside her area of expertise.  Tr. 28-29.  A medical provider's specialization is a relevant consideration in weighing medical opinion evidence.  20 C.F.R. § 416.927(c)(5).  As a LMHC, Plaintiff's physical functioning is outside the scope of Ms. Dinges' expertise.  *See Williams*, 2015 WL 5039911 at *8 (citing *Brosnahan*, 336 F.3d at 676).  The ALJ reasonably credited the opinion of Dr. Spackman, a reviewing expert who reviewed the longitudinal record, about Plaintiff's physical functioning over that of Ms. Dinges.  Tr. 29.  This was a germane reason for the ALJ to discredit Ms. Dinges' opinion.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 17, is DENIED.

2. Defendant's Motion for Summary Judgment, ECF No. 21, is GRANTED.

3. The Court enter JUDGMENT in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and CLOSE THE FILE.

ORDER - 31

DATED September 4, 2018.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE